UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-cv-24643-BB

**NELSON FERNANDEZ**,

     Plaintiff,

vs.

**GS AVENTURA LLC, d/b/a
GAROTA DORAL, a Florida
limited liability company,**

     Defendant.

_____/

## <u>ORDER GRANTING PLAINTFF'S MOTION FOR DEFAULT FINAL JUDGMENT</u>

THIS CAUSE is before the Court upon the Plaintiff's Motion for Default Final Judgment, ECF No. [11].  The Court has reviewed the Motion, the record in the case, and is fully advised. It is **ORDERED AND ADJUDGED** that the Motion, **ECF No. [11]**, is **GRANTED**, and the Court finds as follows:

Plaintiff filed his Complaint against Defendant on December 8, 2023.ECF No. [1]. On December 15, 2023, Plaintiff effected service on Defendant by serving its Registered Agent, The Machado Law Firm. ECF No. [6]. Defendant's response to the Complaint was due by January 5, 2024. On January 10, 2024, the Court issued an Order on Default Procedures giving the Defendant until January 17, 2024, to respond to the Complaint. The Order further stated that if Defendant failed to file any response to the Complaint, Plaintiff shall submit his Motion for Entry of Clerk's Default with respect to Defendant no later than January 24, 2024. ECF No. [7], which Plaintiff did on January 18, 2024. ECF No. [8]. The Clerk's Default was subsequently granted and entered on January 18, 2024. ECF No. [9].

Because of Defendant's Default, the Court finds the following to be uncontested facts:

1.      Plaintiff NELSON FERNANDEZ is a resident of Palm Beach County, Florida, is sui juris, and is disabled as defined by the ADA and ADA Amendments Act of 2008, 42 U.S.C. §12101 ("ADAAA"). Complaint ¶4.

2.      Plaintiff is and at all relevant times has been a visually impaired and physically disabled person who has been medically diagnosed with Relapsing-Remitting Multiple Sclerosis ("RRMS"). Complaint ¶5. Plaintiff has developed optic neuritis and is visually disabled, with complete blindness in one eye and limited vision in the other eye. *Id.* Plaintiff thus is substantially limited in performing one or more major life activities, including, but not limited to, sight and accurately visualizing his world and adequately traversing obstacles. *Id*. As such, he is a member of a protected class under the ADA, 42 U.S.C. §12102(1)-(2), the regulations implementing the ADA set forth at 28 CFR §§36.101, et seq., and 42 U.S.C. §3602(h). *Id.*

3.      Plaintiff's visual disability limits him in the performance of major life activities, including sight, and he requires assistive technologies, auxiliary aids, and services for effective communication, including communication in connection with his use of a computer. Complaint ¶8.

4.      Because he is visually disabled, Plaintiff cannot use his computer without the assistance of appropriate and available auxiliary aids, screen reader software, and other technology and assistance. Complaint ¶6.  At a rapid pace, the software reads the content of a webpage to the user. *Id.*  "The screen reading software uses auditory cues to allow a visually impaired user to effectively use websites. For example, when using the visual internet, a seeing user learns that a link may be 'clicked,' which will bring her to another webpage, through visual cues, such as a change in the color of the text (often text is turned from black to blue). When the

sighted user's cursor hovers over the link, it changes from an arrow symbol to a hand. The screen reading software uses auditory – rather than visual – cues to relay this same information. When a sight impaired individual reaches a link that may be 'clicked on,' the software reads the link to the user, and after reading the text of the link says the word 'clickable.'…Through a series of auditory cues read aloud by the screen reader, the visually impaired user can navigate a website by listening and responding with her keyboard." *Id.,* quoting *Andrews v. Blick Art Materials, LLC*, 286 F.Supp.3d 365, 374 (E.D.N.Y. 2017).

5.     Defendant is a Florida limited liability company authorized to do business and doing business in the State of Florida. Complaint ¶7.  Defendant owns, operates, and/or controls three retail stores selling women's apparel, including one of the stores Plaintiff intended to patronize in the near future located at 8300 Northwest 36th Street, Suite 106B, Doral, Florida. *Id.*

6.     At all times material, Defendant was an organization that owns, operates, and/or controls three retail stores selling women's apparel under the name "Garota". Complaint ¶10. Each "Garota" store is open to the public. *Id.* As the owner, operator, and/or controller of these retail stores, Defendant is defined as a place of "public accommodation" within meaning of the ADA because Defendant is a private entity which owns and/or operates "a bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment," per 42 U.S.C. §12181(7)(E) and 28 C.F.R. §36.104. *Id.*

7.     Because Defendant is a store open to the public, each of Defendant's physical stores is a place of public accommodation subject to the requirements of the ADA, 42 U.S.C. §12182, §12181(7)(E), and its implementing regulations, 28 C.F.R. Part 36. Complaint ¶11.

8.     Defendant also owns, controls, maintains, operates, and is directly linked to and benefits from the Website. Complaint ¶12.  One of the functions of the Website is to provide the

public information on the locations of Defendant's stores. *Id.* Defendant also sells to the public its merchandise through the Website, which acts as a critical point of sale for Defendant's merchandise available for purchase in, from, and through Defendant's physical stores. *Id.* In addition, Defendant's Website allows the public to sign up for an emailer to receive exclusive online offers, benefits, invitations, and discounts for use online and in the physical stores. *Id.* The Website services Defendant's physical stores by providing information on available products, services, tips and advice, editorials, sales campaigns, events, and other information that Defendant is interested in communicating to its customers. Complaint ¶13.

9.      Because the Website allows the public the ability to secure information about the locations of Defendant's physical stores, purchase merchandise also available for purchase in and from the physical stores, and sign up for an emailer to receive exclusive online offers, benefits, invitations, and discounts for use online and in the physical stores, the Website has a nexus to, and is an extension of and gateway to, the goods, services, privileges, and advantages of Defendant's physical stores, which are places of public accommodation under the ADA. Complaint ¶14. As an extension of and service, privilege, and advantage provided by a place of public accommodation as defined under the ADA, the Website is an extension of the services, privileges, and advantages made available to the general public by Defendant at and through its brick-and-mortar locations and businesses. *Id.*  Furthermore, the Website is a necessary service and privilege of Defendant's physical stores in that, as a critical point of sale for the stores, it enables users of the Website to make online purchases of Defendant's merchandise that is also available for purchase in and from its physical stores. *Id.*

10.     Because the public can view and purchase Defendant's goods through the Website that are also offered for sale in Defendant's physical stores, thus having the Website act

as a critical point of sale for Defendant's products that are also sold in and from the physical stores, and sign up for an emailer to receive exclusive online offers, benefits, invitations, and discounts for use online and in the physical stores, the Website is an extension of and gateway to the physical stores, which are places of public accommodation pursuant to the ADA, 42 U.S.C. §12181(7)(E). Complaint ¶15. As such, the Website is a necessary service, privilege, and advantage of Defendant's brick-and-mortar stores that must comply with all requirements of the ADA, must not discriminate against individuals with visual disabilities, and must not deny those individuals the same full and equal access to and enjoyment of the goods, services, privileges, and advantages afforded the non-visually disabled public both online and in the physical stores. *Id.*

11.     At all times material, Defendant was and still is an organization owning, operating, and/or controlling the Website. Complaint ¶16. Since the Website is open to the public through the internet, by this nexus the Website is an intangible service, privilege, and advantage of Defendant's brick-and-mortar stores that must comply with all requirements of the ADA, must not discriminate against individuals with visual disabilities, and must not deny those individuals the same full and equal access to and enjoyment of the goods, services, privileges, and advantages as afforded the non-visually disabled public both online and in the physical stores. *Id.* As such, Defendant has subjected itself and the Website to the requirements of the ADA. *Id.*

12.     Plaintiff is and/or has been a customer who is interested in patronizing, and intends to patronize in the near future once the Website's access barriers are removed or remedied, one or more of Defendant's physical store, including the store located at 8300 Northwest 36th Street, Suite 106B Doral, Florida, and to search for the brick-and-mortar stores, check store hours and merchandise pricing, purchase merchandise, and sign up for an emailer to

receive exclusive offers, benefits, invitations, and discounts for use at the Website or in Defendant's physical stores. Complaint ¶17.

13.     The opportunity to shop and pre-shop Defendant's merchandise and sign up for an emailer to receive exclusive online offers, benefits, invitations, and discounts for use both online and in the physical stores from his home are important and necessary accommodations for Plaintiff because traveling outside of his home as a visually disabled individual is often a difficult, hazardous, frightening, frustrating, and confusing experience. Complaint ¶18. Defendant has not provided its business information in any other digital format that is accessible for use by blind and visually disabled individuals using screen reader software. *Id.*

14.     Like many consumers, Plaintiff accesses a number of websites at a time to help plan his visits and compare merchandise, services, prices, sales, discounts, and promotions. Complaint ¶19. Plaintiff may look at several dozen websites to compare features, services, discounts, promotions, and prices. *Id.*

15.     Beginning in October 2023, Plaintiff attempted on a number of occasions to utilize the Website to browse through the merchandise and online offers to educate himself as to the merchandise, services, sales, discounts, and promotions being offered, learn about the brick-and-mortar stores, check store hours, and check merchandise pricing with the intent to make a purchase through the Website or in one of the physical stores. Complaint ¶20. However, Defendant's Website contains access barriers that prevent free and full use by blind and visually disabled individuals using keyboards and available screen reader software. Complaint ¶21. These barriers are pervasive and include, but are not limited to, the following: (a) when browsing through products, colors that were read by the screen reader but were not further described to let a user of screen reader software know that the information stated pertained to the color options

available for a product; (b) the lack of a proper label for product sizes, which were only given as abbreviated letters (e.g., S = small, M = medium, L = large, etc.); when the screen reader interpreted the size information, it was read as cap s, cap m, or cap l and no actual size. Additionally, no further explanation and/or description was given of the size feature; (c) for purposes of screen reader software integration, product information (e.g., text describing the item, price, etc.) that was not properly labeled; (d) when this feature of the Website was utilized, the lack of any confirmation that a given products quantity was increased or decreased; and (e) when inside the shopping cart and when this feature of the Website was utilized, the lack of any confirmation that the action of removing an item from the shopping cart occurred. *Id.* These access barriers were independently confirmed by Plaintiff's expert, Robert D. Moody, in October 2023. Complaint ¶55.

16.     Plaintiff attempted to locate an "accessibility" notice, statement, or policy on the Website that would direct him to a webpage with contact information for disabled individuals who have questions or concerns about, or who are having difficulties communicating with, the Website. Complaint ¶22. However, Plaintiff was unable to do so because no such link or notice, statement, or policy existed on the Website. *Id*.

17.     The fact that Plaintiff could not communicate with or within the Website left him feeling excluded, frustrated, and humiliated, and gave him a sense of isolation and segregation, as he is unable to participate in the same shopping experience, with the same access to the merchandise, sales, services, discounts, and promotions, as provided at the Website and in the physical stores as the non-visually disabled public. Complaint ¶23.

18.     Plaintiff desires and intends, in the near future once the Website's access barriers are removed or remedied, to patronize one or more of Defendant's physical stores and to use the

CASE NO.  23-cv-24643-BB

Website, but he is presently unable to do so as he is unable to effectively communicate with Defendant due to his visual disability and the Website's access barriers. Complaint ¶24. Thus, Plaintiff and others who are blind and/or with visual disabilities will suffer continuous and ongoing harm from Defendant's intentional acts, omissions, policies, and practices as set forth herein unless properly enjoined by this Court. *Id.*

19.     Because of the nexus between Defendant's retail stores and the Website, and the fact that the Website clearly provides support for and is connected to Defendant's retail stores for its operation and use, the Website is an intangible service, privilege, and advantage of Defendant's brick-and-mortar stores that must comply with all requirements of the ADA, must not discriminate against individuals with disabilities, and must not deny those individuals the same full and equal access to and enjoyment of the goods, services, privileges, and advantages as afforded the non-visually disabled public both online and in the physical stores, which are places of public accommodation subject to the requirements of the ADA. Complaint ¶25.

20.     Defendant thus has not provided full and equal access to, and enjoyment of the goods, services, facilities, privileges, advantages, and accommodations provided by and through the Website and the physical stores in contravention of the ADA. Complaint ¶37.

21.     The Website does not meet the Web Content Accessibility Guidelines ("WCAG") 2.0 Level AA or higher versions of web accessibility. Complaint ¶35.

22.     Defendant is, and at all relevant times has been, aware of the barriers to effective communication within the Website which prevent individuals with visual disabilities from the means to comprehend information presented therein. Complaint ¶40. Defendant is, and at all relevant times has been, aware of the need to provide full and equal access to all visitors to the Website. Complaint ¶41.

23.     The barriers that exist on the Website result in discriminatory and unequal treatment of individuals with visual disabilities, including Plaintiff. Complaint ¶42.

24.     Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged hereinabove, and this suit for declaratory judgment and injunctive relief is his only means to secure adequate and complete redress from Defendant's unlawful and discriminatory practices in connection with the Website's access and operation. Complaint ¶43.

25.     Notice to Defendant is not required because of Defendant's failure to cure the violations. Complaint ¶44.

26.     Enforcement of Plaintiff's rights under the ADA is right and just pursuant to 28 U.S.C. §§2201 and 2202. Complaint ¶45.

27.     Plaintiff retained his attorneys, Roderick V. Hannah, Esq. and Pelayo M. Duran, Esq., to represent him in this case, and has agreed to pay them a reasonable fee for their services. Complaint ¶46.

## I.      LEGAL ANALYSIS

### i.      ADA Claim

The ADA covers both tangible and "intangible barriers", which would include company websites, that restrict a disabled person's ability to access and enjoy the defendant entity's goods, services, and privileges.  *See* 42 U.S.C. § 12182(b)(2)(A)(i) – (ii); *Rendon v. Valleycrest Productions, Ltd.,* 294 F.3d 1279, 1283 (11th Cir. 2002).  *See also Fernandez v. Flanigan's Enterprises, Inc.,* No. 23-80073-CIV-SINGHAL, 2023 WL 4285317, at *3 (S.D. Fla. June 29, 2023 (denying motion to dismiss website ADA claim where website acted as "intangible barrier" to purchase of the defendant's food and beverages sold through the website); *Ariza v. The Coffee Beanery, Ltd.,* 643 F.Supp.3d 1334, 1338-39 (S. D. Fla. 2022) (denying motion to dismiss

website ADA claim where website acted as "intangible barrier" to purchase of the defendant's merchandise sold through the website); *Ariza v. Walters & Mason Retail, Inc.,* 561 F.Supp.3d 1350, 1354-55 (S.D. Fla. 2021) (same); *Fernandez v. Bruno Northfleet, Inc.,* 568 F. Supp. 3d 1294, 1298-99 (S.D. Fla. 2021) (same); *Fernandez v. Mattress Xperts Broward, Inc.,* No. 21-80573-CIV-MARRA, 2021 WL 3931243 at *2 (S.D. Fla. Sep. 2, 2021) (same).  In this regard, a company's website violates the ADA in situations where its serves as an "intangible barrier" to disabled persons to communicate with the company's physical stores and to thereby access the goods, services, and privileges that are otherwise available in the company's physical locations, which are places of public accommodation under the ADA. *Flanigan's Enterprises,* 2023 WL 4285317, at *3; *Coffee Beanery*, 643 F.Supp.3d at 1339; *Walters & Mason,* 561 F.Supp.3d at 1355; *Bruno Northflleet,* 568 F. Supp. 3d at 1298-99; *Mattress Xperts*, 2021 WL 3931243 at *2. In addition, judges within the Southern District have concluded that where a company's website acts as a point of sale for the company's merchandise that is also available in and from the company's physical stores, then the website is covered under the ADA to the extent it acts as an intangible barrier to access the company's goods and services. *Bruno Northflleet,* 568 F. Supp. 3d at 1298-99; *Mattress Xperts*, 2021 WL 3931243 at *2.

Similar to the websites that were at issue in *Flanigan's Enterprises, Coffee Beanery*, *Walters & Mason, Bruno Northfleet,* and *Mattress Xperts,* Defendant's Website, as established by the uncontested facts in the Complaint, acts as a point of sale for Defendant's products available in and from its physical stores. Complaint ¶¶12, 13, 14, 15, 25, and 49.  The uncontested facts further demonstrate that Defendant's Website is inaccessible to blind and visually disabled individuals such as Plaintiff who must use screen reader software to successfully access and navigate the Website. *Id.* at ¶¶19-22, 24, 26-33, 35-37.  Accordingly,

Defendant has violated the ADA because the undisputed inaccessibility of the Website has created an "intangible barrier" to Plaintiff, as a visually disabled person, to full and equal access to and enjoyment of the goods, services, facilities, privileges, and advantages that Defendant offers its sighted customers in and through its physical store.

### ii.    Plaintiff's Attorney's Fees, Costs, and Expert Expense

### A.    Entitlement

Pursuant to the ADA, prevailing parties may be entitled to attorney's fees, litigation expenses, and costs. Specifically, 42 U.S.C. § 12205 states in pertinent part:

> In any action or administrative proceeding commenced pursuant to this chapter, the court or agency, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee, including litigation expenses, and costs, and the United States shall be liable for the foregoing same as a private individual.

42 U.S.C. § 12205 (emphasis supplied); *Ass'n of Disabled Ams. v. Neptune Designs, Inc.*, 469 F.3d 1357, 1359 (11th Cir. 2006) (quoting 42 U.S.C. § 12205).  For purposes of the ADA, a "prevailing party" is one that "[r]eceive[s] at least some relief on the merits of his claim . . . ." *Buckhannon Bd. & Care Home v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 603-04 (2001) (quoting *Hewitt v. Helms*, 482 U.S. 755, 760 (1987) (internal quotation marks omitted)).

While the award of attorney's fees and costs are within the sound discretion of the trial court, the standards established for determining when a court should exercise that discretion to award fees to a prevailing party are those set forth by the U.S. Supreme Court in *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412 (1978). *Bruce v. City of Gainesville*, 177 F.3d 949, 951-52 (11th Cir. 1999) (applying *Christiansburg* standard in ADA suit); *Daniel-River v. Everglades College*, No. 16-60044-CIV-DIMITROULEAS, 2017 WL 5197509 at *2 (S.D. Fla. June 16,

2017).  Per *Christiansburg*, a prevailing plaintiff "should ordinarily be awarded attorney's fees in all but special circumstances." *Id*. at 951.

There are no "special circumstances" present here under which this Court should not award Plaintiff his fees and costs in light of his entitlement to the full requested injunctive relief for his ADA claim against Defendant.  Plaintiff thus should be awarded his litigation costs and reasonable attorney's fees as the prevailing party under both his ADA claim.  To this end, Plaintiff requests that the Court find that he is entitled to an award of his reasonable attorney's fees and taxable costs.

In addition, Plaintiff should be awarded his expert expense incurred in connection with bringing this case. While expert witness fees are ordinarily not taxable costs, pursuant to 42 U.S.C. §12205 such fees may be taxed as a litigation expense in ADA cases. *Fox v. The Marquis Corp.*, 2010 U.S. Dist. LEXIS 25831, 2010 WL 1010871 at *7 (S.D. Fla. March 15, 2010) (citing *Lovell v. Chandler*, 303 F.3d 1039, 1058-59 (9th Cir. 2002)); *Hansen v. Deercreek Plaza, LLC,* 420 F. Supp. 2d 1346, 1353 (S.D. Fla. 2006) ("A prevailing ADA plaintiff may recover expert fees as a litigation expense.") (internal citation omitted); *Ariza v. Limonada Group, LLC,* No. 23-CV-20542-RAR, 2023 WL 2799127, at *4 (S.D. Fla. April 5, 2023) (same).

**B.      Amount of Attorney's Fees Sought is Reasonable**

**1.      The Lodestar Method**

The Eleventh Circuit follows the "lodestar" method described in *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983), which held that "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate," since this computation "[p]rovides an objective basis on which to make an initial estimate of the value of a lawyer's services." *Id.* at 433; *Norman v.*

CASE NO.  23-cv-24643-BB

*Hous. Auth. of City of Montgomery*, 836 F.2d 1292 (11th Cir. 1988).  Once the Court calculates this amount — the "lodestar" — it must consider whether any adjustments are warranted based on the results obtained by counsel. *Id.* at 1302.

The party seeking an award of fees bears the burden of documenting and substantiating both the number of hours and the hourly rate. *ACLU of Georgia v. Barnes*, 168 F.3d. 423, 427 (11th Cir. 1999).  In determining reasonable hourly rates in South Florida, the Court may also consider certain factors, including "the attorney's customary fee, the skill required to perform the legal services, the attorney's experience, reputation and ability, the time constraints involved, preclusion of other employment, contingency, the undesirability of the case, the attorney's relationship to the client, and awards in similar cases." *Mallory v. Harkness*, 923 F. Supp. 1546, 1555 (S.D. Fla. 1996) (citing factors articulated in *Johnson v. Ga. High. Express, Inc.*, 488 F.2d 14, 717-19 (5th Cir. 1974)).  Each of these factors will be discussed below.

### a.      Results Obtained

Civil rights laws in general depend heavily upon private enforcement. *Hensley v. Eckerhart*, 461 U.S. 424, 445 (1983). Where the ADA is concerned, "private enforcement suits are the primary method of obtaining compliance with the Act," *D'Lil v. Best Western Encina Lodge & Suites*, 538 F. 3d 1031, 1036 (9th Cir 2008); *Doran, v. 7-Eleven, Inc.*, 524 F.3d at 1041 (same). Because of the importance of the federal rights private enforcement actions vindicate, such actions are, as the Supreme Court noted, "private in form only." *Guardian Ass'n v. Civil Service Comm'n*, 463 U.S. 582 (1983).  In *Villano v. Boynton Beach*, 254 F.3d 1302, 1306 (11th Cir. 2001), the Eleventh Circuit held that "successful civil rights actions vindicate a public interest ...[and] [p]ublic benefit is a distinct measure of success in civil rights actions and ... a

court must account for that distinct measure of success when calculating an award of fees and costs."

As the result of this lawsuit, the Plaintiff will obtain significant results which substantially increase the accessibility of Defendant's Website not only to him but also to all blind and visually disabled consumers.

### b.    Experience, Reputation, and Ability of the Attorneys

Plaintiff's attorneys have significant litigation experience in both federal and state court and have significant experience in civil rights cases, including ADA Title III litigation. Roderick Hannah has over 39 years of litigation and trial experience in South Florida, including handling a wide array of cases in the Southern District of Florida.  As lead or sole counsel, he has handled many federal cases involving discrimination matters, including cases arising under the ADA in both the employment and public accommodation contexts.  He currently devotes a large portion of his practice to ADA Title III accessibility issues, particularly to issues involving company website accessibility.  *See* Affidavit of Roderick V. Hannah, Esq., ECF No. [11-3].

Pelayo Duran, Mr. Hannah's co-counsel, has over 25 years of litigation experience in South Florida and has handled and been involved in numerous cases in the Southern District of Florida, including cases arising under the ADA involving public accommodation discrimination. He, like Mr. Hannah, also devotes a substantial portion of his practice to ADA Title III website accessibility issues.  *See* Affidavit of Pelayo M. Duran, Esq., ECF No. [11-4].

### c.    Time and Labor Required

Appended to Messrs. Hannah and Duran's respective supporting Affidavits are copies of their respective time records documenting the time and effort required to obtain the resolution of this case. In general, time incurred by Plaintiff's counsel in filing, preparing, and litigating this

fee application and any fee hearings thereon is and/or would be compensable.  *See Martin v. University of South Alabama*, 911 F.2d 604, 610 (11th Cir. 1990); *Guerrero v. Commings*, 70 F.3d 1111 (9th Cir. 1995); *Davis v. City and County Of San Francisco*, 976 F.2d 1536, 1544 (9th Cir. 1992); *Valley Disposal, Inc. v. Central Vermont Solid Waste Mgmt. Dist.*, 71 F.3d 1053 (2nd Cir. 1995); *Lund v. Affleck*, 587 F.2d 75 (1st Cir. 1978); *Johnson v. State of Mississippi*, 606 F.2d 635 (5th Cir. 1979); *Bagby v. Beal*, 606 F.2d 411 (3d Cir. 1979).

As set forth in Messrs. Hannah and Duran's affidavits with their respective time records, Plaintiff's counsel spent a total of 14.3 combined hours working on this case.  In addition, the time amounts in the proffered time records do not account for any attorney time and costs which will be expended on post-judgment efforts such as continuing to check on Defendant's Website compliance. The time spent was reasonably necessary to prepare and file the case, secure the final default judgment, obtain the complete injunctive relief requested, and making Defendant's Website fully accessible to visually disabled persons, including Plaintiff.

### d.    Novelty, Difficulty, and the Skill Requisite to Perform the Legal Services Properly

Effective representation of plaintiffs in ADA actions requires not only sophisticated general litigation skills, such as familiarity with the rules of evidence and procedure. The Court recognizes there are numerous issues regarding entitlement to injunctive relief, including Article III Constitutional standing, the nature of barriers to access, the concept of undue burden, the applicability of exemptions, issues of new construction and alterations versus pre-ADA construction, and extensive knowledge of the ADA, the applicable Web Content Accessibility Guidelines (also known as the "WCAG", the "gold standard" in ADA website accessibility guidelines followed by the U.S. government's agencies), the Technical Assistance Manual, a

multitude of other guides issued by the Department of Justice, the developing body of case law issued by the courts nationwide, and, finally, whether remedial measures are "readily achievable" and "technically feasible".  In addition, it is not unusual for Plaintiff's attorneys to find themselves opposed by the substantial financial and legal resources of corporate defendants.

### e.  Reasonable Hourly Rate, Customary Fee, and Similar Fees Awarded

A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonable, comparable skills, experience, and reputation. *See, Marisol A. v. Giuliani*, 111 F. Supp.2d 381 (S.D.N.Y. 2000).  The Court looks to the District in which the case was brought. *Patrolmen's Benevolent Assn. of the City of New York, Inc. v. The City of New York*, 2003 WL 21782675 (S.D.N.Y. 2003); *AR v. New York City Department of Education*, 407 F.3d 65 (2d Cir 2005); *Access 4 All, Inc. v. Park Lane Hotel, Inc.*, 2005 WL 3338555 (S.D.N.Y. 2005).  Here, that is the Southern District of Florida.

In determining the reasonableness of the fees and hourly rates, it is appropriate to consider rates awarded in other cases.  Because the attorney compensation is based on contingency, and payment has not been made, courts award the current prevailing market rate.  The current market rate is the rate at the time of the fee petition, not the rate at the time the services were performed.  This takes into account the delay in payment.  *Lanni v. State of New Jersey*, 259 F.3d 146, 149-50 (3d Cir. 2001).  Additionally, in considering the rates awarded in prior cases, courts adjust rates upward to account for inflation.

In a number of prior ADA website cases, judges within this District – including this very same Court -- have ruled that a $425.00 hourly rate that was being charged by Plaintiff's counsel, Messrs. Hannah and Duran, was not excessive and was fair, reasonable, and recoverable. *Ariza v. Diatrade LLC,* Case No. 21-cv-21137-GAYLES, ECF No. 20 at pp. 3-4 (S.D. Fla. Apr. 6, 2022);

CASE NO.  23-cv-24643-BB

*Ariza v. Limonada Group, LLC,* 2023 WL 2799127, at *3-4 (S.D. Fla. April 5, 2023); *Ariza v. Wolf Fashion LLC,* No. 22-cv-21944-BLOOM, 2022 WL 3591294, at *2 (S.D. Fla. Aug. 22, 2022); *Ariza v. Untuckit, LLC,* Case No. 19-cv-24291-BLOOM, 2020 WL 408241 (S.D. Fla. Jan 24, 2020); *Fernandez v. Sunday State LLC,* No. 9:22-cv-80653-RS, 2022 WL 12256263, at *8 (S.D. Fla. Oct. 19, 2022); *Ariza v. South Moon Sales, Inc.,* No. 1:21-cv-23604-WILLIAMS/MCALILEY, 2022 WL 4345136, at *8 (S.D. Fla. Sept. 7, 2022), *report and recommendation adopted,* 2022 WL 4310972 (S.D. Fla. Sept. 19, 2022); *Fuller v. Things Remembered, Inc.*, Case No. 19-62034-CIV-GAYLES/STRAUSS, 2020 WL 1316509 (S.D. Fla. Feb. 11, 2020); and *Moncada v. Intrigue Couture, Inc.*, Case No. 19-cv-61496-RUIZ, ECF No. 22 (S.D. Fla. Oct. 18, 2019).

Plaintiff seeks an hourly rate for the work of his counsel, Messrs. Hannah and Duran, of $450.00.  Given current inflationary and market conditions, the Court views the $450.00 hourly rate as reasonable and recoverable.  The reasonableness of a $450.00 hourly rate is supported by other Southern District of Florida ADA decisions.  *See, e.g., Access 4 All, Inc. v. The TJX Companies, Inc.,* Case No: 11-cv-80109, ECF No. 30, at 11-12 (S.D. Fla. 2011) (case decided *over twelve years ago* where counsel for the defendant represented to the Court that $450.00 per hour was the rate for "senior" attorneys); *Houston v. South Bay Investors,* Case No. 13-CV-80193 (S.D. Fla. July 25, 2013) (case decided *ten years ago* where court found that the plaintiff's requested hourly rate of $420.00 was "reasonable in light of counsels' experience and citation to other cases in this district wherein the courts approved an identical rate."); *Kennedy v. 5096 Forest Hill Investments, LLC,* Case No. 15-cv-81001, at ECF No. 21 (S.D.  Fla. October 21, 2015) (*more than eight-year-old case* where court found $420.00 hourly rate to be reasonable).  *See also James v. Wash Depot Holdings, Inc.*, 489 F. Supp. 2d 1341, 1350 (S.D. Fla. 2007),

(finding $450 hourly rate was reasonable for two lawyers with 10 and 25 years of experience, less than what Plaintiff's counsel have here); *Maldonado v. Green Explosion, Inc.*, No. 21-cv-21024-REID, 2022 WL 1025102 at *4 (S.D. Fla. Mar. 1, 2022) (finding as reasonable $450.00 hourly rate for attorney with over 20 years of experience).

Based on Plaintiff's counsel's experience in this field, the contingent nature of the case, the terms of the retainer agreement, prior cases finding the rates charged to be reasonable, and the rate being in line with the prevailing market rate in this District, Plaintiff's counsel's $450.00 hourly rate is reasonable and recoverable.

### f.         Whether the Fee is Fixed or Contingent

The fee in the instant action was and is contingent.  Plaintiff's counsel has incurred significant expenses in bringing and pursuing this case, including the filing and service of process fees, copying charges, and an expert witness fee totaling $4,275.00.

### g.         Time Limitations Imposed

Because the barriers to access complained of by Plaintiff restricted and/or limited Plaintiff's access to the subject website, time was of the essence.  Every day that passed while the undersigned did not work on the case and made every effort to expedite its resolution, by pursuing litigation, was another day that the website would remain inaccessible.

### h.         Nature of the Professional Relationship with the Client

Messrs. Hannah and Duran have represented similarly disabled plaintiffs in many other actions, and have a continuing relationship with their clients, including Plaintiff in this particular action.  This has led to increased efficiency in the prosecution of this litigation.

Based on these relevant factors, Plaintiff and his counsel submit that the total amount of $6,435.00 in attorney's fees incurred to date and through the preparation of this Motion, based on

CASE NO.  23-cv-24643-BB

14.3 combined hours of attorney time at $450.00 per hour, are reasonable and should be awarded.

## C.    Costs and Litigation Expenses

### 1.    Taxable Costs

Plaintiff seeks reimbursement of his statutory costs from Defendant, pursuant to Federal Rule of Civil Procedure 54(d) and 28 U.S.C. § 1920.  Pursuant to Federal Rule of Civil Procedure 54(d) and 28 U.S.C. § 1920, the Court shall award costs to the prevailing party in a lawsuit.  Rule 54(d) creates a presumption in favor of awarding costs, which the opposing party must overcome. *Manor Healthcare Corp. v. Lomelo*, 929 F.3d 633, 639 (11th Cir. 1991). Recovery of costs incurred in the case are also available under the Miami-Dade Code, § 11A-24(2).

The award of costs in favor of the prevailing party in federal court is governed by 28 U.S.C. § 1920 and Federal Rule of Civil Procedure 54. 28 U.S.C. § 1920 specifies the following as costs that a court may tax: (1) fees of the clerk and marshal; (2) fees of the court reporter for all of any part of the stenographic transcripts necessarily obtained for use in the case; (3) fees and disbursements for printing and witnesses; (4) fees for exemplification and copies of papers necessarily obtained for use in the case; (5) docket fees under section 1923 of this title; (6) compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title. *See* 28 U.S.C. § 1920; *Barberi v. PDVSOL, Ltd. Liab. Co.*, No. 16-23243-CV-GAYLES/TUR, 2017 U.S. Dist. LEXIS 81267, at *27-28 (S.D. Fla. May 24, 2017).

The decision to award costs is discretionary with the Court, but the Court may tax items specifically enumerated in 28 U.S.C. § 1920, absent alternative contractual or statutory authority.

CASE NO.  23-cv-24643-BB

*Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 445 (1987).  In the instant case, Plaintiff's Counsel incurred taxable costs in the amount of $505.80, consisting of the case filing fee of $405.00, the cost for service of process of the Complaint on Defendant for $45.00, and the costs for copies of papers that were necessarily obtained for use in this case for $55.80.  The allowable taxable costs per 28 U.S.C. § 1920(1) and (4) thus total $505.80.

        **2.      Expert Witness Fees**

        As mentioned above, expert witness fees are ordinarily not taxable costs; however, pursuant to 42 U.S.C. §12205 such fees may be taxed as litigation expenses in ADA cases. *Fox,* 2010 WL 1010871 at *7 (citing *Lovell v. Chandler*, 303 F.3d 1039, 1058-59 (9th Cir. 2002)); *Hansen,* 420 F. Supp. 2d at 1353 ("A prevailing ADA plaintiff may recover expert fees as a litigation expense.") (internal citation omitted); *Ariza v. Limonada Group, LLC,* 2023 WL 2799127, at *4.

        As set forth on the detailed invoice for services of Plaintiff's expert, Robert D. Moody, attached as Exhibit "F", Mr. Moody spent considerable time and effort, totaling 9.5 hours, to analyze Defendant's Website in October 2023 and then to continue to provide expert input as the case progressed. Thus, Plaintiff's expert performed valuable services at the rate of $450.00 per hour for the progress and outcome of the case, and Plaintiff is entitled to expert witness fees as non-taxable costs in the total amount of $4,275.00.  This amount is consistent with similar amounts Mr. Moody has been awarded for his expert witness services in prior ADA website cases in this District, including decision by this same Court.  *See, e.g., Ariza v. Limonada Group, LLC,* 2023 WL 2799127, at *4 (awarding Mr. Moody expert fees of $4,275.00 based on $450 hourly rate as "reasonable and recoverable" expert witness litigation expense); *Ariza v. Wolf Fashion LLC,* 2022 WL 3591294, at *2-3 (same); *Fernandez v. Sunday State LLC,* 2022 WL

CASE NO.  23-cv-24643-BB

12256263, at *9 (same); *Ariza v. South Moon Sales, Inc.,* 2022 WL 4345136, at *9 (same) ; *Ariza v. Diatrade LLC,* Case No. 21-cv-21137-GAYLES, ECF No. 20 at pp. 3-4 (same).

## II.     CONCLUSION

Based on the foregoing, Plaintiff is entitled to an award to Plaintiff of **$11,215.80**, consisting of attorney's fees in the total amount of $6,435.00, taxable costs in the amount of $505.80, and expert witness fees in the amount of $4,275.00.

**DONE and ORDERED** in Chambers on Miami, Florida, on March 6, 2024.

_____

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to: Counsel of record

GS Aventura LLC
Registered Agent
The Machado Law Firm
1395 Brickell Avenue
Suite 800
Miami, FL 33131

Carolina Silva
19501 Biscayne Boulevard
Suite 1982
Aventura, FL 33180